(No. 6810.    March 29, 1941.)

IDAHO POWER COMPANY, a corporation, and OTIS E. SYSTER and MARY E. SYSTER, Respondents, v. CITY OF BUHL, a Municipal corporation, Appellant.

[111 Pac. (2d) 1088.]

REHEARING DENIED APRIL 21, 1941

J. R. Bothwell and J. T. Murphy, for Appellant.

A. F. James, A. C. Inman, and Hawley & Hawley, for Respondent Idaho Power Company.

R. W. Hudelson for Respondents Syster.

AILSHIE, J.—Clear Lake, a body of water of about 40 acres surface area, is situated on the North side of Snake River in Gooding county. The lake is surrounded by lands owned by respondents, Systers, who claim to have certain rights to some (7 second feet) of the waters of the lake "for irrigation and domestic purposes, based upon a priority of March 1st, 1889." Respondent Idaho Power Company, a public utility, engaged in the generation and sale of electric power and energy, operates nine power plants in the state, one of which is at Clear Lake.

June 29, 1914, application for permit, to appropriate 1,000 cubic feet per second of the waters of Clear Lake, "to be used for power," was filed with the state engineer by William C. Hazzard; permit No. 10415, which was approved July 8, 1914, provided that "the whole of said work . . . be completed on or before July 8, 1919." June 27, 1927, the diversion works were completed. July 16, 1927, the application and permit rights were transferred by Hazzard and wife and assigned to the Bankers Trust Company, a Utah corporation. August 12, 1927, the Bankers Trust Company executed a 99-year lease to the Systers. August 27th the Systers executed a deed to the

Power Company to all the property, with the exception of 7 second feet of water of Clear Lake, already diverted and used by grantors for irrigation and domestic purposes.

March 12, 1937, appellant City of Buhl (through its agent, H. A. DeNeal) filed application No. 25707 for 1,000 cubic feet per second of the waters of Clear Lake, to be used for "power and municipal purposes for the City of Buhl"; the application was returned for correction and was received and filed the second time May 13, 1937. June 26, 1937, respondent, Idaho Power Company, filed protest against the issuance of permit to appellant, and June 28th respondents, Systers, also filed protest against such issuance. August 2, 1937, hearing was had before the Commissioner of Reclamation and November 9, 1937, appellant's application was approved by the Commissioner and permit No. 18554 issued November 29, 1937. Appeals were taken to the district court by the respondents; by stipulation of the parties, the appeals were consolidated and the cases tried and submitted as one case. Trial was had to the court on the testimony and exhibits introduced before the Commissioner, and judgment was entered, to the effect that the order of the Commissioner of Reclamation be reversed and set aside, from which judgment defendant City of Buhl has appealed.

Under the rule governing the examination and consideration on appeal of evidence submitted to the trial court, where the witnesses did not personally appear and testify before the court, it becomes our duty to examine and weigh the proofs *de novo.* (*Stoneburner v. Stoneburner,* 11 Ida. 603, 607; *Jackson v. Cowan,* 33 Ida. 525, 526; *Cannon v. Seyboldt,* 55 Ida. 796, 800; *John Hancock Mut. Life Ins. Co. v. Girard,* 57 Ida. 198, 202.)

The first point urged on this appeal is that the appeal to the district court, from the order of the Commissioner of Reclamation, was not taken by the respondents within the time prescribed by the statute (sec. 41-203, I. C. A., as amended by chap. 145, 1935 Sess. Laws, p. 359). The statute says: "Such appeals shall be taken within sixty days from the ruling or action of the commissioner." The

controversy arises here out of the circumstance, that the ruling and order of the commissioner bears date "this 9th day of October, 1937"; whereas, the letter signed by the commissioner, directed to the respondent, Idaho Power Company, inclosing order, bears date November 9, 1937. The letter reads as follows:

"Boise

November 9, 1937

Arthur C. Inman
c/o Idaho Power Company
Boise, Idaho

Dear Sir:

I am enclosing herewith an order made and entered this day in the matter of the protest of Otis E. Syster and Mary E. Syster, husband and wife, and the Idaho Power Company against issuance of a permit to the City of Buhl, Idaho, to appropriate 1,000 second feet of the waters of Clear Lake in Gooding County, Idaho, under Application No. 25707, which is self-explanatory.

Yours very truly,
(Sgd.) R. W. Faris
R. W. FARIS,
Commissioner of Reclamation."

Furthermore, the *certified copy of the application* for permit shows *indorsement thereon of the approval* of the commissioner under date of November 29, 1937.

It, therefore, seems to us, that the ruling and order of the commissioner, as drafted, was dated by the draftsman October 9th, and was evidently not signed and approved by the Commissioner until *November 9th,* the date on which he transmitted the copy to the protestants. In the letter of communication the Commissioner says he is inclosing "order made and entered this day." In the absence of more definite and direct proofs, as to the actual date of *signing* and *entering* the order, we think the court is bound to accept the statement of the Commissioner, made under date of *November 9th,* saying that *the order was made and entered on that day.* We

conclude that the appeal, taken from the order of the Commissioner, was in time.

It is next contended, that the trial court erred in finding and holding that the application No. 25707, made on behalf of the City of Buhl, was "initiated in trespass upon the lands, properties and rights of Idaho Power Company and of Otis E. and Mary E. Syster," and in concluding, as a matter of law, that the same was accordingly void.

The decision of this case must necessarily turn upon the question, as to whether the court properly found that appellant's permit and right or claim was initiated in trespass.

It is the settled rule of decision in this state, that a water appropriation or permit to appropriate the public waters of the state can not be acquired through trespass. (*Marshall v. Niagara Springs Orchard Co.*, 22 Ida. 144, 155; *Tobey v. Bridgewood*, 22 Ida. 566, 575; *Bassett v. Swenson*, 51 Ida. 256, 259.) It has also been held, and correctly so, we think, that it is not "trespass *per se*, to make application for and receive a permit to appropriate the waters of this state, where the point of diversion is upon the land of another, without first acquiring consent or a grant of such right." (*Bassett v. Swenson*, 51 Ida. 256, 261.)

The surveyor, Harold Wm. Merritt, who prepared the notes and plats, has certified the plat as follows:

"I, Harold Wm. Merritt, a licensed Engineer of the State of Idaho, and residing at Twin Falls, do hereby certify that this map was prepared from notes of a survey made by me and dated June 6, 1926, and that it correctly represents the works described in the accompanying application.

Harold Wm. Merritt,<br>Engineer."

Concerning the map, to which the foregoing certificate is attached, the Commissioner in his order says:

"Upon examination of the map accompanying the application, it is found that the certificate of the engineer is practically identical with the form prepared by the Department of Reclamation and sent out to all applicants

for permit to appropriate the public waters of the State of Idaho, and which has been in use in this Department for many years."

The statute, sec. 41-202, I.C.A. (chap. 145, 1935 Sess. Laws), requires, among other things, that an application shall show:

" . . . .

2. The source of the water supply.

3. The nature of the proposed use.

4. The location and description of the proposed ditch, channel or other work and the amount of water to be diverted and used. . . ."

As observed in *Bassett v. Swenson, supra,* where the necessary data can be furnished as to location, point of diversion, etc., from observation or survey made beyond the premises where the diversion is to take place, there is no trespass and of course no requirement that the information be obtained upon the ground. Such information may have been obtained when the premises belonged to the government, or later by someone who held the property prior to the ownership of the present occupant asserting the trespass. The trespass must be physical, not merely *mental.* Here, so far as the record is concerned, it appears that the engineer, Merritt, made a survey of these premises in June, 1926, when the land was owned by the Hazzards, and there is no contention that such survey was made in trespass. At any rate, it would make no difference with the respondent how it was made, for the reason that respondent had no interest in the premises at that time; and such a trespass would not have injured or concerned respondents.

It could very well happen, in some cases, that a sufficient description, to meet the requirements of the statute and regulations of the Commissioner of Reclamation, could be made from observation or memory, of a stream or body of water and surrounding lands. We think it is a fair inference, from the record in this case, to assume that the original application, as sent in to the Commissioner March 12, 1937, may have been prepared from information acquired through or by reason of the trespass of the surveyor Perry. On the contrary, no such

inference can be gathered as to the survey by Merritt and the data furnished with the corrected or amended application.

The testimony of Mrs. Syster shows that an engineer named Perry, in company with Mr. DeNeal, a City of Buhl councilman, and Mr. Sherfey, an attorney of Buhl, called at the Syster residence situated on respondent's property, and sought permission to go on the property, for the purpose of making a survey, and that the request was refused; and one of them said "that he could go down to the grounds and register as a picnic player, and make the survey." This was some time the latter part of March, 1937. The same witness also testified that later Perry stated to her, "that he surveyed from the bluff, and from the springs, clear down through"; and that he (Perry) said "he did the surveying himself." It was upon this and similar testimony that respondent relied and the trial court found:

"That said Application No. 25707 and the resulting Permit No. 18554 were initiated in trespass upon the lands, properties and rights of Idaho Power Company and of Otis E. and Mary E. Syster."

On the other hand, the application and the permit, as they come to this court, show that such survey, as may have been made, was by the engineer, Merritt; and that the survey, upon which the descriptions contained in the application were given, was made in June, 1926. This certificate is not contradicted, except it be by inference drawn from these extraneous circumstances.

It appears that Merritt was present during the hearing before the Commissioner and could have been called for examination by either party. Since the burden of proof rested upon the party asserting the trespass, it was the privilege of respondents to call the engineer Merritt and examine him as to when, where, and how he obtained the information shown on the plat certified by him, and when he made the certificate thereon. If, as suggested by respondents, Merritt was present or available as a witness, his testimony was no more available to appellant than to respondent; and such testimony as he

could have given was not evidence or knowledge peculiarly within the control of either party so as to raise an unfavorable presumption against either party for failure to call the witness and submit his testimony as suggested by respondents' authorities. (*Spaulding v. Coeur d'Alene Ry. & N. Co.*, 5 Ida. 528, 533; *Sullivan v. Idaho Wholesale Co., Inc.*, 43 Ida. 149, 155; *Vollmer v. Vollmer*, 46 Ida. 97, 108; *Garrett v. Neitzel*, 48 Ida. 727, 733; *Federal Land Bank v. Union Central Life Ins. Co.*, 51 Ida. 490, 499; *Weed v. Idaho Copper Co.*, 51 Ida. 737, 751; *Bedke v. Bedke*, 56 Ida. 235, 240; *Dooley v. West American Commercial Ins. Co.*, (Cal.) 23 Pac. (2d) 766, 768; *Western & Atlantic R. Co. v. Morrison*, (Ga.) 29 S. E. 105; 22 C. J., sec. 24, p. 81.)

It is true that sometimes it is unsafe and unwise to call an adverse or unfriendly witness, where the party calling him will be bound by his testimony, but there is nothing in this record to indicate that the engineer Merritt was unfriendly to respondent, nor that he was more friendly to appellant than to respondent; nor does it appear for whom he made survey of June 6, 1926.

It nowhere appears that the engineer Perry was authorized to speak or act for the applicant (appellant here) or that any statements made by him were binding upon the applicant. In the state of the record as we find it, we fail to see how the Commissioner could have been justified in sustaining the protest and denying the permit sought by the appellant; nor can we find any competent evidence on which to rest the findings and conclusion of the trial court, in reversing the action of the Commissioner and ordering the permit cancelled.

Judging from the condition of the exhibits before us, we are forced to the conclusion that the original application, filed with the Commissioner March 12, 1937, was returned to the applicant and was corrected by a change in description of "point of diversion" and "point of use and return." Evidently the correction was made on the same paper or document that was originally sent in. We find certain descriptions crossed out and others inserted, as shown by the following photostatic copy of the material part thereof:

# APPLICATION FOR PERMIT

### TO APPROPRIATE THE PUBLIC WATERS OF THE STATE OF IDAHO

Application No. 25707

Permit No.

District No.

1. Name of applicant:

   Postoffice address ........ Buhl ........ County. Twin Falls State. Idaho

   I. If applicant is a corporation, give:

   (a) Date and place of incorporation: *Municipal Corporation under statute*

   (b) Amount of capital stock: $............ (c) Amount paid in: $ ......

   (d) Names and addresses of directors: *Mayor- Gan L. Thompson - Directors (-Councilmen)*
   *C.R. Overbaugh, James Gannon, ~~Arthur Wilson~~ Grant Miller, all of*
   *Buhl, Idaho* H.A. DeNeal

   II. The financial resources of the applicant are: (a) Cash on hand: $ *36,075 ⁸⁴*

   (b) Treasury stock: ——— (c) Bonds to be issued: ———

   (d) Other resources: *$ ~~500,710~~ $497,600 ──*

2. Quantity of water claimed: 1300 cubic feet per second.

3. Source of water supply: Clear Lakes

   which is a tributary of Snake River

4. Location of point of diversion: ~~N 36°17'E 1355~~ *N.43°30'E -1805* feet distant from the *South* 1/4 corner

   of Section 2, T 9 S, R 14 E B. M., and is in the Lot 7,

   of Section, T, R B. M., County of Gooding

5. Water is to be used for: power and municipal purposes for the City of Buhl, Idaho

6. If for mining, milling, power or manufacturing purposes, give:

   (a) Point of use of water: ~~N 34°17'E 363~~ *N.77°0'E 318* feet distant from *South* 1/4 corner of Section 2,

   T 9 S, R 14 E, B. M., in the *Lot 7* of Section 2, T 9 S, R 14 E, B. M.

   (b) Amount of power generated: 6800 H. P., under 75 feet head.

   (c) Water is to be returned to *Snake River* at a point *N.77°0'E 318* ~~N 34°17'E 363~~ feet

   distant from the *South* 1/4 corner of Section 2, T 9 S, R 14 E, B. M., in the

   *Lot 7* of Section 2, T 9 S, R 14 E, B. M.

7. Estimated cost of works: $ *75,000 ──*

8. Kinds of works: *Conc. ~~diversion~~ dam - head gates - & riveted steel pipe conduit, and intake structure.* (Reservoir, dam, ditch, flume, pipe, etc.)

9. Height of dam *7* ~~ft~~ feet; length of dam at top ~~212~~ *219* feet; length of dam at bottom ~~240~~ *210*
   (If height of dam will exceed 10 feet, send to Department of Reclamation for Regulations)

   feet; material used in dam *reinforced concrete*

10. Size of headgate: Width *7 1/2 (each)* feet; Height *7 1/2* feet.

11. Ditch: Width at bottom feet; Width at water line feet; Depth of water feet;

    Dimensions of flume Diameter of pipe *(2) 90* inches;

    Length of conduit ~~.25~~ *.21* miles. Average grade per mile ~~540~~ *355* feet.

We conclude that the trial court was not justified in reversing the order of the Commissioner of Reclamation, under the record made in this case.

The respective water rights, or relative priorities of the parties, are not involved herein and are not determined by this opinion.

The judgment is reversed and the cause is remanded, with direction to affirm the order of the Commissioner of Reclamation, denying the protests of respondents and approving appellant's application No. 25707. Costs awarded appellant.

Givens, Morgan and Holden, JJ., concur.

BUDGE, C. J. (Dissenting)—I am unable to concur in the majority opinion as it is written.